IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEREK AND STEPHANIE MUMM, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 05 C 6149 |
| v. | ) | |
| | ) | The Honorable William J. Hibbler |
| CRAIG WETTER, DONNA J. SAUNDERS, | ) | |
| TOM TEMPLETON, RANDAL CARMEAN, | ) | |
| JOHN R. MYERS, AND CITY OF MENDOTA, | ) | |
| ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Derek and Stephanie Mumm allege that their landlord, Craig Wetter, and various LaSalle County and City of Mendota officials violated their civil rights after the Mumms were evicted because they failed to pay their rent. The Mumms also allege that the Defendants inflicted emotional distress, unlawfully evicted them, trespassed against them, unlawfully arrested Derek, and breached an oral tenancy. The Defendants have moved to dismiss the Mumms' Complaint for a variety of reasons. The Court grants in part and denies in part their motions.

I. Factual Background

The Mumms allege that they entered into an oral month-to-month tenancy agreement with Craig Wetter to lease an apartment in Mendota, Illinois. On June 8, 2004, Wetter obtained a default order for possession because the Mumms owed him $1040 in rent due and $71 in fees. On July 2, July 30, and September 10, 2004, the Mumms paid Wetter with three personal money orders, totalling $1,220. Two months later, on October 28, 2004, Randal Carmean, a deputy in the LaSalle

1

County Sheriff's Department, forcibly evicted the Mumms from their apartment at the behest of Donna Saunders, Wetter's building manager.

Carmean instructed the Mumms and their children to leave the premises immediately. When the Mumms refused, Carmean sought the assistance of the Mendota Police Department. Officer John Myers and Officer Robert Guerrero (who is not a defendant) came to the Mumms' apartment. According to the Mumms, Myers and Carmean then arrested Derek Mumm for criminal trespass and resisting arrest because he refused to leave the apartment.

As a result, the Mumms filed a six-count complaint against Wetter, Saunders, Carmean, Myers, Tom Templeton (the Sheriff of LaSalle County), and the City of Mendota. In Count I, the Mumms allege that Wetter and Saunders breached an oral tenancy with them. In Count II, they allege that the Defendants intentionally inflicted emotional distress against them when they evicted them. In Count III, the Mumms allege that the Defendants unlawfully entered their apartment and unlawfully evicted them. In Count IV, the Mumms allege that the Defendants trespassed against them. In Count V, the Mumms allege that Carmean and Myers unlawfully arrested Derek Mumm. In Count VI, the Mumms allege that the Defendants deprived them of due process and of the equal protection of the laws. The Defendants move to dismiss the Mumms claims against them.

## II. Standard of Review

A motion to dismiss tests the sufficiency, not the merits, of a complaint. *Cler v. Ill. Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005). Dismissal of a complaint is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim on which relief can be granted. *Id*. When evaluating a motion to dismiss, a court must accept all allegations as true and

construe all reasonable inferences from those facts in favor of the non-moving party. *Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir. 2005).

### III. Wetter's and Saunders' Motion to Dismiss

Wetter and Saunders first argue that the Mumms cannot state a claim for a breach of an oral tenancy. The Defendants cite *Vintaloro v. Pappas*, 310 Ill. 115, 118 (1923) to suggest that a lessor can continue to collect rent due after a breach without reaffirming tenancy. While *Vintaloro* is instructive, the Defendants' reliance on it is premised upon an interpretation of the facts that is favorable to them — a conclusion that the $1220 in payments made by the Mumms was dedicated entirely to paying rent due. That, however, is not the only reasonable inference that the Court can draw from these facts. Here, the Mumms allege that they owed $1111 in rent due on June 8, 2004, when Wetter obtained the default judgment against them. The Mumms further allege that sometime subsequent to this judgment, they entered into a new oral month-to-month tenancy, and that Wetter accepted rent due pursuant to this tenancy. The Mumms paid Wetter $1220, in three money orders. A July 2 money order, for $485, has no subject written upon it. A July 30 money order, for $250, states that it is payment toward rent due. And a September 10 money order, for $485, states that it is for "September Rent." Consistent with these allegations, the Court can reasonably infer that sometime subsequent to June 8, 2004, Wetter agreed not to evict the Mumms if they complied with a payment plan for the outstanding rent and continued to pay future rent due. The Mumms do allege that they reached an agreement with Wetter sometime after June 8, 2004, that they paid rent pursuant to that agreement, and that even though Wetter accepted rent pursuant to that agreement he later evicted them. That is sufficient to state a claim for a breach of an oral tenancy. The Mumms, however, allege that Saunders acted only as the building manager for Wetter. Therefore, they cannot

state a claim for a breach of an oral tenancy against her. Accordingly, Count I is DISMISSED with prejudice as to Saunders. Wetter's Motion to Dismiss Count I is DENIED.

Next Wetter and Saunders argue that the Mumms cannot state a claim for intentional infliction of emotional distress. To state a cause of intentional infliction of emotional distress, a plaintiff must allege, among other things, that the defendant's conduct was "extreme and outrageous" and that the plaintiff actually suffered emotional distress. *Tuite v. Corbitt*, 358 Ill. App. 3d 889, 899 (2005). Liability attaches only in circumstances where the defendant's conduct is so outrageous and extreme that it goes beyond all possible bounds of decency and does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities. *Id.* "[A] line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions wholly lacking in social utility." *Knierim v. Izzo*, 22 Ill.2d 73, 85 (1961) (threat to murder plaintiff's husband stated claim for intentional infliction of emotional distress); *see also Feltmeier v. Feltmeier*, 207 Ill.2d 263 (2003) (pattern of domestic violence sufficient to state claim for emotional distress); *Public Finance Corp. v. Davis*, 66 Ill.2d 85 (1976) (creditor's attempt to collect debt did not rise to level necessary to cause severe emotional distress unless accompanied by vulgar language, threats to ruin credit and employment). Being accused of a crime, even one of dishonesty, and the accompanying shame, grief, humiliation, and worry, is not sufficient to state a claim for intentional infliction of emotional distress. *Gianforte v. Elgin Riverboat Resort*, No. 02-02-1390, 2003 WL 22208916 (Ill. App. Ct. Sept. 17, 2003). The Mumms emotional distress claim is premised entirely on their allegations that: 1) the Defendants did not inform them that they were to be evicted; and 2) Carmean and Saunders commenced the eviction while the Mumms were sleeping (albeit during the day). An allegedly wrongful eviction

4

(particularly one where the evictors possessed and were acting upon a default judgment against the lessee noting that the lessees "ha[d] to be out by 9:00 A.M." on the date of the eviction), though unpleasant and worrisome, simply is not the type of "extreme and outrageous" conduct necessary to form the basis of an intentional infliction of emotional distress claim. To hold otherwise would transform nearly every alleged mistake made by police officers or county officials into an intentional infliction of emotional distress claim. Count II is DISMISSED with prejudice as to all of the Defendants.

Wetter and Saunders next argue that the Court should dismiss the Mumms' claim for unlawful forcible entry and eviction because it is duplicative of their trespass claim and their Section 1983 claim. There is a more fundamental problem, however, with the Mumms' claim. They have based it on the Illinois Forcible Entry and Detainer Act, 735 ILCS 5/9-101 *et seq.* The Act provides that "no person shall make entry into lands or tenements except in cases where entry is allowed by law." The Act limits when an action may be taken pursuant to it and what remedies are available under it. 735 ILCS 5/9-102. The purpose of the Act is to settle disputes over the possession of real property. *See Avenaim v. Lubecke*, 347 Ill. App. 3d 855, 861 (2004) ("matters not germane to the issue of possession may not be litigated in a forcible entry and detainer action."); *Russell v. Howe*, 293 Ill. App. 3d 293, 297 (1997). The Mumms do not seek possession of the property— they seek damages for the violation of the Act. The Act, however, does not contemplate a right of action for damages for a tenant who believes that a landlord has violated the Act. Because the Act does not envision such an action, the Mumms have failed to state a claim and Count III is DISMISSED with prejudice as to all of the Defendants.

Wetter and Saunders next argue that the Mumms' claim for trespass must fail. The Defendants argue that individuals can be liable for trespass only if they act with knowledge that their conduct will result in an intrusion. Illinois law contains no such requirement, and trespass can be premised on negligent conduct. *Dial v. City of O'Fallon*, 81 Ill.2d 548, 556-57 (1980). A defendant can face liability for trespass, even when operating under a good-faith, but mistaken, belief that the land is his own. *Lyons v. State Farm Fire and Cas. Co.*, 349 Ill. App. 3d 404, 410 (2004). Further, a landlord's invasion of a tenant's right to possession can form the basis of a trespass claim for which the landlord is liable. *Gronek v. Neuman*, 52 Ill. App. 2d 250, 253 (1964). Wetter and Saunders also argue that the Mumms have not alleged facts sufficient to demonstrate that they were entitled to possession. The Mumms have alleged the existence of a valid lease, an allegation that the Court must take as true, and which is sufficient to demonstrate that they were entitled to possession. The Defendants' motion to dismiss Count IV is DENIED.

Finally Wetter and Saunders move to dismiss the Mumms' § 1983 claims against them because they are not state actors. To establish liability under 42 U.S.C. § 1983 a plaintiff must prove that the conduct complained of violated a constitutional right of the plaintiff and that the act was committed by a person acting under color of state law. *Yang v. Hardin*, 37 F.3d 282, 284 (1994). To implicate a private actor under § 1983, a plaintiff must demonstrate that the private actor shared with at least one state official a common, unconstitutional goal such that a conspiracy or understanding existed between the public and private actors to violate the plaintiff's constitutional rights and that the private actor was a willful participant in joint activity with the State or its agents. *Stagman v. Ryan*, 176 F.3d 986, 1003 (7th Cir. 1999); *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998). Private actors do not act under the color of the law merely by requesting the assistance of

6

the law, even when they may not have grounds to do so. A conspiracy to violate a plaintiff's constitutional rights must exist. *Proffitt v. Ridgway*, 279 F.3d 503, 508 (7th Cir. 2002); *Hughes v. Meyer*, 880 F.2d 967, 972 (7th Cir. 1989). The Mumms allege that Wetter and Saunders enlisted the sheriff's aid to enforce an Order of Possession that, allegedly, was unenforceable. As *Proffitt* and *Hughes* make clear, by itself, their request that the sheriff's department enforce the Order of Possession is insufficient to transform them into state actors and Count VI is DISMISSED as to Wetter and Saunders.

IV. Carmean's and Myers's Motions

Carmean's and Myers's motions can be disposed of quickly. Carmean and Myers argue that the Court should dismiss Counts IV and V (trespass and false arrest) against them because they are entitled to immunity under 745 ILCS 10/2-202.[1] The Illinois Tort Immunity Act (TIA) grants police officers immunity for their conduct in law enforcement unless that conduct is willful and wanton. 745 ILCS 10/2-202. Carmean argues (and Myers adopts the same argument) that "the facts recited in the complaint . . . imply that Carmean may have acted negligently or mistakenly in enforcing an order of the court for possession, which had become stale." The Mumms' Complaint, however, alleges that both Carmean and Myers "knew or should have known" that enforcement of the stale order of possession was unlawful. It is true that if the Mumms prove only that Carmean and Myers "should have known" that the enforcement of the stale order was unlawful, Carmean and Myers would be entitled to the protections of the TIA. Because the Complaint alleges also that Carmean and Myers "knew" that the enforcement of the order was unlawful, the Mumms have sufficiently

---

[1] Carmean and Myers also move to dismiss Count III on the same basis. As noted earlier, Counts II and III were dismissed as to all of the Defendants.

7

alleged willful conduct at this stage of the litigation. *Cler*, 423 F.3d at 729. Whether the Defendants actually knew that the order had expired is not an issue that is appropriate to resolve on a motion to dismiss. Consequently, Carmean's and Myers's Motions to Dismiss Counts IV and V is DENIED.[2]

V. Templeton's and the City's Motions

Both Templeton and the City argue that the Court should dismiss the Mumms' § 1983 claim because the Mumms do nothing other than make boilerplate allegations of County and City policy. In order to hold a municipality liable for violating a person's civil rights, a plaintiff must establish that the constitutional injury was caused by: 1) an express municipal policy; 2) a custom or practice that is so settled as to constitute an official policy; or 3) a person with final decisionmaking authority. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995) Although there is no heightened pleading standard for § 1983 claims, boilerplate allegations of a municipal policy, entirely lacking in any factual support that a policy does exist, are insufficient. *Id.* at 382-83. Further, *respondeat superior* is not a basis for municipal liability under § 1983. *Monell v. Dept. of Social Serv.*, 463 U.S. 658, 690-91, 98 S.Ct. 2018, 2036 (1978). In this case, the Mumms allege only that Carmean and Myers were under the control of Templeton and the City, respectively. The Mumms make no allegation, even a boilerplate allegation, that there was an express municipal policy, a custom or practice, or a person with final decisionmaking authority that caused their

---

[2] The Motions of Tom Templeton and the City of Mendota to dismiss Counts IV and V, which are premised on the Illinois Tort Immunity Act, are also DENIED. The City of Mendota points out that the prayer for relief in Count V is on behalf of both Dereck and Stephnaie Mumm and that Stephanie Mumm was never arrested, an argument that Plaintiffs do not contest. Accordingly, claims made on behalf of Stephanie Mumm in Count V are DISMISSED as to all of the Defendants.

alleged deprivations. Nor do the Mumms even respond to Templeton's and the City's arguments. Accordingly, Templeton's and the City's motions to dismiss Count VI are DISMISSED.[3]

## VI. Motions to Strike

The Defendants bring several motions to strike, which the Mumms do not oppose. The Defendants argue that: 1) the Mumms' prayer for punitive damages cannot be joint and several; 2) the Mumms cannot recover punitive damages against the City of Mendota or against any Defendant (Templeton, Carmean, or Myers) in his official capacity. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 2762 (1981). To the extent that the Mumms pray for joint and several liability for punitive damages, that prayer is stricken. To the extent that the Mumms pray for punitive damages against a municipality or an official acting in his official capacity, those prayers are stricken. This order shall not be construed to otherwise strike the Mumms' prayer for punitive damages in any count that remains.

IT IS SO ORDERED.

_____  
Dated

_____  
AMY J. ST. EVE  
United States District Court

---

[3] To the extent that the Mumms seek to bring Count VI against Myers and Caremean in their official capacities, those claims are also DISMISSED.